Good morning, Counsel. Good morning, Your Honor. Jonathan Schneller on behalf of Michael Chong. I'm going to try to reserve two minutes for rebuttal. All right. Although the briefs in this case hit on a lot of issues, this is actually not a complicated case. Everybody agrees, the District Court and both parties, that the frisk of Mr. Chong was illegal. And everybody agrees that Mr. Chong had standing with respect to that frisk. Under the fruit-of-the-poisonous-tree doctrine, that is all Mr. Chong needs to suppress all of the frisk's fruits, including both the mail key that was discovered during the frisk itself, and the papers that the officers turned their attention to immediately after the frisk disclosed the mail key. Well, I guess that's to suggest that there's no other evidence, no other facts in this record that are at all interesting. There are a lot of interesting facts in the record, Your Honor. Well, I guess, I mean, it seems to me that you're focusing pretty heavy, but the bottom line is there's no question that your client has no standing to search or to, if you will, object to the search of the area. Your Honor, we do not contend Mr. Chong has standing with respect to the crime. Mr. Chong has no standing to object to the search of the car, no standing to challenge the search of the parking lot, and therefore anything in the car, in the parking lot, the police can get without problem. The only reason that we get to your specific way you came up and phrased it is because you want them to only be subject to this frisk that was illegal. But there were other things that were going on that are not illegal. Two responses to that, Your Honor. First, under the fruits doctrine. Under the fruits doctrine, if the area where they were, this car, can be searched without him having any problem with it, and if the parking lot can be searched without any problem with it, then anything they can find there, regardless of what happens with the frisk, is okay. Respectfully, Your Honor. How do you get there? Only by saying the only way they knew about those was because they frisked and got the key. But the bottom line is there's no evidence to that effect other than when things happen. So respectfully, I disagree, Your Honor. To begin with, I'd like to emphasize that it's the government's burden to establish that the latter search was not the fruits of the first. I understand that. And as far as the evidence pointing to the fact that it was the fruits, which isn't our burden to prove, but there is evidence in the record, it's not just the close temporal proximity. It's also a direct logical connection between the papers and the key. Is there any evidence the officers took anything from his possession, anything except that key? Before the officers... Is there any evidence? Answer my question. No, there is none. He possessed the papers before the officers... They possessed. If they'd have been in his lap, that's one thing, but they weren't. They were on the ground. He dropped them. Well, Your Honor, once again, that's a question on which the government bears the burden of proof to show. Well, I'm looking at the evidence, and I'm trying to suggest what it is here. And again, I'm at the point where I say, you know, I'm trying to look at the area. I don't think there's anything that says the government couldn't have got there. As to the items seized, I'm trying to think what was in your client's possession. There's no evidence that the stuff was his in the car or in the parking lot. There's nothing in this record, nothing submitted by your client to suggest that. You argue that you dropped the papers inadvertently, but that has nothing to do with it. Before the district court, you didn't even agree that you possessed the papers. So, again, I'm trying to get there, but I can't, so that's why I'm asking you. It's not correct that Mr. Chung didn't agree that he possessed the papers. The government says that in its brief, but Mr. Chung never contested that he possessed the papers. That was actually, if you look at his reply brief, that was the premise of standing, was that the papers were in his possession on his lap. So that's not correct. Not at the time they were seized, though. I mean, this is sort of a more subtle fruit of the poisonous tree argument because the mail was actually found before they frisked him. Well, it was not searched before they frisked him. The papers were on the ground, but the district court made a factual finding that there was nothing facial. There's no evidence that it was facially incriminating, that anything facially incriminating was in plain view. So there were papers on the ground. That's true. I guess I have to read again. It seemed to me your argument before the district court was that you didn't even agree that you possessed those papers. Your Honor, I'd encourage you to look at the reply brief in the district court, which very strongly states that he did possess the papers, and that was the basis for standing. Why is this evidence not in plain view? Because I believe that finding is at page 17 of the excerpt of record, or 18. What the district court found is that there were some documents that were facially incriminating and some that were not, and there was no record evidence about how these documents were arrayed once they fell off his lap. So, for example, there were notebooks that there was nothing facially incriminating about, and the district court says, I don't know if these notebooks were on top of some of the papers that were facially incriminating. I don't know how these things were laid out. There's no record evidence on that question. Did you ever challenge the impoundment of the car? No, we didn't challenge the legality of impoundment. Okay, so then the inventory search would have happened, right? No, Your Honor. Inventory searches don't always happen when cars are impounded, and in this case, there's no record evidence. But just a minute. If you don't challenge the impoundment, then there's no reason the inventory search could have happened. So respectfully, Your Honor, sometimes police impound cars and don't conduct inventory searches, and in this case, there's no record evidence that an inventory search actually took place. Well, but what we're looking at here now is why would not this evidence have been found anyway? Correct, Your Honor. So the bottom line is, if they can do an inventory search and you don't challenge the impoundment, then how do we deal with this? Because there's no question, after finding the papers in the car, they had probable cause to arrest. If they had probable cause to arrest, they could have found the key. They could have found the papers. So I guess I'm trying to figure out where you're going. Well, so you've thrown a lot of points at me. Well, I've tried to put the evidence as it is before us. So let me try to take it as I can. With respect to the inventory search, it's the government's burden to prove that an inventory search would have actually happened. They have to prove that discovery was inevitable. And in this case, they presented no record evidence that any inventory search took place of the vehicle. They have evidence of an inventory of Chong's property, which fell onto the ground outside the vehicle. But there's no record evidence that an inventory search of the vehicle was ever conducted. And I'd encourage you to ask them where in the record there's proof of an inventory search, because there is none. As far as the documents falling off of his lap, as I mentioned earlier, the government bears the burden to prove he abandoned any expectation of privacy he had when the papers were on his lap. That requires proof of an intentional act, and there's no proof that he did this intentionally. So the government has a proof to abandon. I don't understand that argument. It's conceded that they had the right to ask him to get out of the car. Correct, Your Honor. And the papers falling wherever they fell on the parking lot and in the car were not the result of any unlawful conduct by the police. That's correct, Your Honor. That leaves the papers, stolen mail, on the floor of a public parking lot or in a stolen car. It would be one thing, I mean, the analogy is, of course, to the key. The key they actually got to by a pat-down search, and even though the key was probably stolen, he has standing to object to it. But I don't understand the standing argument with respect to stolen mail that was not on his person when it was seized. Right. So briefly, the argument is that the relevant point in time to examine this is when the police approached Mr. Chung. At that point, he did have possession of the papers. Well, why is that the relevant point? When they approached him, they did nothing. They approached the car, and they lawfully asked him to get out of the car. Yes, he may have been in possession of them when he was in the car, and if they had illegally ordered him out of the car, that would be another story. I'll be brief because I'm running out of time. But we cite a case called Fernandez in our brief where the search also happened when the defendant was not in possession of the property. He had pointed at it, and someone else took it. And this court held he still had standing over that suitcase because the government hadn't met its burden approving abandonment, even though he didn't possess it at the time it was searched. And I would argue the same analysis is appropriate here, where there was standing at the moment the police approached him, and there's no proof of subsequent abandonment. Well, I'm sorry. You have the burden of proof on the issue of standing, and you chose not to have a hearing. So you were content to rely on the report that was prepared by the Los Angeles police and an application for a search warrant. But I have two questions. First, during the course of the oral argument, the prosecutor said, as far as I could see without any contradiction, that there were in a transparent envelope. Some of the items were in a transparent envelope that, and I quote, you could see right through and see that there weren't checks in other people's names. That was a representation that was made by the prosecutor. It was not challenged. Except what was challenged is that the defense counsel did argue there was no evidence on how that envelope and other papers and the notebooks were all at raid, so that there's no proof, as the district court found, that the officers could actually see anything. So your argument is that if they hadn't gotten the key, they would have just picked up the papers of someone who was sitting in a stolen car and given it back to him. As the district court found, it's a finding for clear errors. There was no proof of anything facially incriminating about these papers. So I don't think it's a stretch to say that. They wouldn't have looked at it. They found somebody sitting in a stolen car, and they wouldn't have looked at the papers. They would have just said, here, take them back. If they hadn't found the key. Is that your argument? My argument is there's no suggestion Mr. Chong was suspected of any crime, and the government has never suggested he was. The district court found that these papers were not facially incriminating, and it's possible that the police officers would have looked through the papers. But there's simply no proof to that effect from the government. They were addressed, you could see right through them, and there were checks in other people's names. That was the representation at oral argument. On that point, Your Honor, I would encourage you just to look at it. I'm referring to 159 of the record. I would encourage you to look at the district court's fact finding on page 18 of the excerpts, where it explains why there was nothing incriminating in plain view. And that's a fact finding that would be reviewed for clear error here. Suppose there's a curious thing about this case, is that you chose not to have a hearing. You basically wanted a go on these documents that are referred to earlier. What's the consequence of that? Your Honor, suppose we agreed with you. Do you automatically win, or do we have the discretion to send it back for a hearing? I don't know of any case that would deprive this court of that discretion, but I do think that the government, too, agreed to litigate this case on the papers. And so the relevant question is which parties have met their burdens based on the papers. But I don't know of any authority. This court obviously has broad discretionary authority over a lot of issues. I guess you were the first. As I read the transcript, you said you were going to go ahead without a hearing, and I think the judge asked the government if it was okay with them. Why did you not ask for a hearing? Was this a strategic decision? I think so. Counsel, in this case, and I didn't litigate this case below, but counsel was of the opinion, is my understanding, that the papers sufficiently established both standing and the Fourth Amendment violation. They were looking to litigate. All right. Thank you, counsel. Thank you. You exceeded your time. No problem. No problem. We'll give you one minute for rebuttal. Good morning, Your Honors. May it please the Court. My name is Anil Antony. I represent the United States in this manner. I want to start by discussing three issues related to standing, Your Honor. But first, I want to take the factual question that Judge Corman raised as to how the papers were arranged. The translucent clear plastic envelope only contained checks of one of the victims. The rest of the items, the record reflects, were loose. They weren't – it's not like everything was in this clear envelope. It was only checks as to one victim. It was essentially a folio of checks as to one victim. So what the district court found was the officers could see the very top sheet of those checks and therefore knew what those checks were. The other thing I would add, Your Honor, is that counsel has repeatedly stated that the district court found that there was nothing facially incriminating about the items that were dropped. But that simply is not correct, Your Honors. What's not correct is it's not correct that the district court found that or it's not correct that there was nothing incriminating? What's your argument? It's not correct that the district court found that there was nothing facially incriminating as to all of the items, Your Honor. The district court's finding was limited to a few items that were purportedly owned by defendants' parents. As an aside, Your Honor, and this is reflected in the record,  but that's what the district court's finding was limited to. Can I ask one factual question? Are we talking about checks outside of envelopes or checks in envelopes? The evidence that was submitted to the court includes checks that were outside of envelopes, Your Honor, checks that had been filled out, checks that hadn't been filled out. Well, I thought the district court said that the check register with the numerous blank checks in J.S.'s name was not incriminating. Do you agree with that? There were actually two of those check registers, Your Honor. But you agree that the district court found that those were not incriminating? I agree as to the one that was a closed folio, Your Honor. The one that was in a translucent envelope, the district court found that, I believe he found that it was not immediately facially incriminating but then went on to found that it would be inevitably discovered. And what was the theory under which it would have been discovered? The district court looked at the fact that there were other items that the defendant did not have standing to, Your Honor, that there were a number of checks and mail of, I think, I believe seven other victims that were found in the defendant's possession or soon after the defendant dropped them on the ground. But what would have been the theory of inevitable discovery? Searches to arrest, inventory search, what method would have been used to discover those inevitably? The district court looked both at search incident to arrest and at an inventory search, Your Honor. But was there an inventory search? Yes, Your Honor. I believe the record does reflect that there was an inventory search. But where in the record does it reflect that there was an inventory search? The police report indicates that the suspect's property was inventory. That's different than an inventory search of the car. Where in the record does it reflect that there was an inventory search of the vehicle? The record reflects that the police officer searched the vehicle for registration information. That's not an inventory search. Where in the record does it reflect that there was an inventory search of the vehicle? Usually there is an impoundment of the vehicle that's taken to a yard or someplace, and then there's an inventory search. Where in the record is there evidence of that? Your Honor, below the way that the parties construed the LAPD report was that an inventory search actually occurred, and the defendant didn't argue that an inventory search didn't actually occur. Where in the record may I look to see that the parties agree that there was an inventory search of the vehicle? I don't have the exact page reference, Your Honor, but it was in the oral argument. Were you the attorney below? Yes, I was the attorney at the oral argument, Your Honor. Is there anything in the record that sets forth the policy of the police department regarding inventory searches? Usually we'll have a written policy that talks about how inventory searches are conducted and when they're conducted. Is there anything like that in the record? I don't believe that the actual language of the policy was attached, but I believe that reference to the policy was made in the response brief below, and the district court below found that the search that occurred, or at least that the court found occurred, did comport with the LAPD policy. My question was going to be the same as Judge Rawlinson's. The inventory search generally in these records, we find a policy that allows us to suggest the inventory search could appear. I agree with you. I don't think there's anything in this record to suggest it, but it seems like the district court said that there was such policy and therefore it did occur, but I guess that's my worry with the inventory search situation. Your Honor, what I would say is that in most cases, the question is whether an inventory search will occur. Here the parties proceeded on the understanding that an inventory search had actually occurred. The other thing I would point out, Your Honor, is that the district... On page 23, the district court decision says, the evidence is undisputed that the officers did, in fact, collect the papers from the ground and inventory them, but there's nothing said about inventory in the car. Yes, Your Honor. I don't understand why you extrapolate from that that the parties agreed that there was an inventory search of the vehicle. My recollection of the record, Your Honor, I don't have an exact page site, is that there wasn't a question as to whether an inventory search occurred. The real question was as to the legality, and the district court found and the government argued before the district court that the defendant didn't have standing to challenge the inventory search. The defendant, in his reply brief before this court, raises the inventory search. That argument wasn't made in the opening brief, so I didn't have an opportunity to respond to it. But the problem I'm having is that it appears that the court was using inventory in the context of inventorying the evidence that's been collected and not doing an inventory of the vehicle once it's been impounded. It may have been, Your Honor, but I think that taking a step back, if I may, the fact is that the papers the defendant dropped on the ground, at first they were held openly on his lap. The record reflects that they were, and I quote, lying on his lap. Then he dropped them on the ground, Your Honor. We would argue that that doesn't indicate that defendant had a subjective expectation of privacy. It's not like he concealed them in a bag. It's not like he concealed them in a briefcase that inadvertently opened. Now, even if he had attempted to protect them in some way, he then dropped them on the ground. The officers saw them on the ground. So at that point, our position is that the officers were entitled to look at it. It doesn't implicate the Fourth Amendment at that point, Your Honor. Regardless of whether there was a later inventory search of the car or not, the officers saw the papers on the ground and had the ability to pick them up at that point. Well, your adversary argues, in effect, is that they wouldn't, if it hadn't been for the key that they found on the first, they wouldn't have even looked at it. If I get it correctly, they'd just give it back to him. Yes, Your Honor. I understand that argument. What's your response? Two points on it, Your Honor. The first is that we don't believe that that argument proceeds in the way that Pulliam envisions this argument proceeding. Pulliam is very clear that the resulting, the items that were discovered have to be found but for, excuse me, let me rephrase that, Pulliam makes clear that evidence will not be excluded as a fruit unless the illegality is at least the but-for cause of the discovery. Now, defendant in his reply brief says that that's not bootstrapping, but we believe it absolutely is, Your Honor, especially in this situation where the defendant, because the items were stolen and then dropped openly on the ground, did not have a legitimate and reasonable expectation of privacy, either as to the location where the items were dropped or as to the items themselves. The second point I would say, in addition to Pulliam, Your Honor, is that the district court did not make specific factual findings as to this fruits argument because it was an argument that was new in the brief before this court. The record doesn't reflect that the defendant made any fruits argument as to the arrow key before the district court. So I would say that to the extent that the court feels like the record needs to be further developed, then that would be something for the district court to do, Your Honor, but we don't believe that that's necessary here because the district court did make findings that we believe that the court can base its judgment on. But didn't the parties agree not to have an evidentiary hearing before the district court? The parties did agree, Your Honor, but this wasn't an argument that the defendant even made before the district court. Right, but I'm just saying you said we could send it back to the district court for a hearing, but didn't the parties waive their right to a hearing before the district court to an evidentiary hearing? Yes, Your Honor. Yes, Your Honor. But I do believe that if the court felt like more factual development was necessary, that the court could send the case back. The only other... I just wanted to ask you another question. Sure, Your Honor. Is your argument the same? You made the argument about the papers that were dropped when the defendant left the car. Is your argument the same as to any papers that remained in the car? Yes, Your Honor, because he doesn't have standing to contest the search of that vehicle. He didn't have a reasonable expectation of privacy in that vehicle. It's essentially the same as dropping them outside the vehicle in a public place. Any other questions? If the mail was improperly examined, are there enough irregularities as to the car that would provide grounds for arrest for the defendant? I believe so, Your Honor, at least to detain. The district court found that the officers were entitled to order the defendant out of the car. The district court also found that the officers would have reviewed papers in the car. The district court found that the mismatched license plate creates, and I quote, a strong and reasonable presumption that the vehicle, the license plate, or both are stolen. So, I mean, what I'm looking at here, the car is unregistered. There's evidence the other people owned the car, and they're in proper plates. Is that sufficient grounds to arrest the defendant? Your Honor, it's an issue that the district court didn't reach. I believe that there were grounds for the officers to search the vehicle. But would that be grounds for arrest? I think that's the question. Understood, Your Honor. As a matter of law, would that be grounds for arrest, and if so, for what? I don't know the answer to that question, Your Honor, and I haven't really thought about whether or not there's grounds for arrest. What I do know is that the court found that the officers did precisely what officers investigating that violation would do, which included looking at the papers in the car, and so that was an inevitable discovery path that the court looked at. But there wouldn't be grounds for arrest. That takes off the table, the search incident to arrest as being a basis for inevitable discovery, correct? Yes, Your Honor, although the district court sliced it a little fine in that respect because my understanding of the district court's reasoning was that the district court said that there was no issue as to the search of the items that the defendant didn't have standing to. Those are the stolen items, and that the officers would have, through a search incident to arrest, discovered the other items that were purportedly owned by his parents but which the government did not believe were his. But you just said we asked you if there was a basis for arrest, and you weren't able to articulate a basis for arrest. I'm not trying to be evasive, Your Honor. I'm just trying to say that I didn't understand the district court's... I'm asking you, not what the district court... Sure. We're asking you was there a basis for arrest at that point under the law. Assuming that the papers had not been looked at, Your Honor? Yes, even if the mail was properly examined. At that point, Your Honor, I don't think that there was a basis at that point, and I... Oh, if there's no basis, then there's no way to get to the key, period. If the court believes that the defendant retained a legitimate expectation of privacy in those papers, then I agree that the analysis would likely stop there, except for the fact that... Well, what if he doesn't? What is the answer to Judge Smith's question? The answer, Your Honor, is that the district court didn't develop this record because the parties argued standing. There are additional facts that I do believe could be developed, but the district court... Those were not developed for the district court, so to the extent that those need to be developed, I believe that that's an issue that the district court should address. All right. Thank you, counsel. Thank you, Your Honor. One minute for rebuttal. Thank you, Your Honor. In answer to Judge Smith's question, in our opening brief at page 15, we cite Road v. City of Roseburg, which is 137F3-1142, which holds that an officer cannot simply impute the driver's presumptive awareness of the vehicle's legal condition to the passenger. So I think counsel is correct to concede there would have been no basis to arrest absent. Oh, absent the papers. Yes, Your Honor. And as far as the papers go, as we explain our brief, we believe Mr. Chung had standing over the papers. But regardless of this court's holding on that point, under the fruits of the poisonous tree doctrine, the logical and temporal proximity between the frisk and the search of the papers entitled Mr. Chung to seek suppression of the papers. I want to be sure I understand your argument about this temporal connection. Once the papers fell onto the parking lot and onto the seat of the stolen car, assuming he had no standing to object, your argument, I want to be sure your argument is that they would not have looked at those papers but for the fact that they found the key. That is my argument, but I would also put it in terms of the government's burden to prove that they would have looked. And I think we've presented or we've cited evidence that tends to negate that proposition specifically. There is evidence. There are cases, any number of cases that have taken judicial notice of the fact that stolen cars are used to facilitate other crimes. I could cite you the cases if you want them or you could search on Westlaw. Or you can take your word for it. Or you can take my word for it. Or I'll send you a note with the papers. I will suggest that his word is good. And suppose the fact that we could take judicial notice of, as other courts have, that one court has said that stolen cars cited through the officer's testimony, that stolen cars are often used to commit other crimes, that stolen cars are often used in further vehicle theft. So this is not in isolation now. So you have these police officers who have at least good reason to believe that this car is stolen. And there's a passenger in the car and somewhat bizarrely is holding all sorts of papers in his lap that drops. You say inadvertently whatever, but there's no evidence as to whether he deliberately dropped them or not. But they're not. Once he drops them, they're on the ground and they're subject to seizure. Does the fact that stolen automobiles are essentially, you know, suggest evidence of other possible criminal activity support the proposition that it would have been, that normal police officers would not have just given him the mail back and let him go without looking at it? Your Honor, I think the fact you mentioned it might be a reason why the officers could have looked at Sean's papers, but there's just no record evidence that they actually would have. The question is whether these particular officers would have looked at the papers if they hadn't first illegally discovered evidence that raised suspicions of mail theft, which makes papers very suspicious. Of course, you know, the officers who encounter a stolen car can be suspicious about any number of things, but the question here is whether the government has proven that these particular officers would have still searched the papers. And I don't think the abstract principle that stolen cars are associated with crime is enough to meet that burden. Well, there are cases, for example, I think that guns are so intimately associated with drugs that one investigating drug activity can have a reasonable suspicion that a person may be armed. I mean, there are certain, we'll call it, facts of life that we could take judicial notice of. Absolutely. I agree with that, Your Honor. And I think you're right that it could support a reasonable suspicion, but that's a distinct question from what we're confronting here, which is whether, as a question of empirical fact, these particular officers would have still looked at the papers. And I don't think that abstract connection is enough to... So if we send it back for a hearing, it would be the officers having to testify that they would have looked. Well, and the court making a credibility determination about whether it agrees that they would have looked, when there's no suggestion of that in the report at all. Now, suppose you win on that point. Does that end the case? I mean, it seems to me that his accomplice buried him in terms of her statement to the postal inspectors, and he would not have been able to take the stand to refute it because they could have used even illegally seized evidence to impeach credibility. So what do you win? So the question is... Even if you win on this notion that they would have just handed him the papers back without looking at him. So I didn't litigate this case below, but I did talk to Mr. Chung's trial lawyer, who was of the opinion that he would not have pleaded guilty if it was just the accomplice's testimony, that he would have taken the case to trial in that event. So I don't know. I don't... My opinion is that he wouldn't have won the trial, but that's a separate story. Right. That's a separate question. All right. Thank you, counsel. Could you please wind up? That's... I think we've covered everything. Thank you very much, Your Honor. All right. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman